**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| BERNARD EVERETT REESE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:12CR337-1 |
| | ) | 1:14CV619 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for recommended rulings on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 31), as amended of right (see Docket Entry 36), and his Motion for Leave to File Supplemental Proceedings pursuant to Federal Rules [sic] of Civil Proc. 15(d) ("Rule 15(d) Motion") (Docket Entry 52).[1] For the reasons that follow, the Court should deny Petitioner's instant Motions.

INTRODUCTION

This Court (per United States District Judge Thomas D. Schroeder) entered a Judgment against Petitioner imposing, inter alia, a prison term of 122 months and a supervised release term of five years, as a result of his guilty plea to possessing a firearm

---

[1] Parenthetical citations refer to Petitioner's above-captioned federal criminal case.

as a felon in violation of 18 U.S.C. § 922(g)(1), and a finding that his prior record triggered enhanced penalties under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). (Docket Entries 19, 60; see also Docket Entry 25 (Plea Hrg. Tr.); Docket Entry 27 (Sent'g Hrg. Tr.); Docket Entry 59 (Presentence Report ("PSR")).)[2] Petitioner appealed (see Docket Entry 20), but the United States Court of Appeals for the Fourth Circuit affirmed and (on April 28, 2014) the United States Supreme Court declined review, United States v. Reese, 548 F. App'x 927 (4th Cir. 2013), cert. denied, ___ U.S. ___, 134 S. Ct. 1958 (2014).

---

[2] Petitioner's PSR found that the ACCA applied because he "ha[d] at least three prior convictions for a violent felony or serious drug offense, or both, . . . which were committed on different occasions." (Docket Entry 59, ¶ 21 (citing Petitioner's four Florida convictions for "Felony Delivery of Cocaine: 89-CF-960, 961, 963; 94-CF-807; and [his Florida conviction] for Felony Arson: 96-CF-323"); see also id., ¶¶ 27 (documenting Petitioner's Florida convictions for "Felony Delivery of Cocaine (three counts) Docket Nos. 89-CF-000960, 89-CF-000961, and 89-CF-000963," and noting that, "[a]ccording to the information [to which Petitioner pleaded guilty], on August 30, 31, and 18, 1989, respectively, [Petitioner] unlawfully sold and delivered cocaine," as well as that, "[a]ccording to Florida law, each of these felony drug offenses are punishable by 15 years imprisonment"), 31 (documenting Petitioner's Florida conviction for "Felony Delivery of Cocaine Docket No. 94-CF-000807" with an offense date of May 27, 1994, and noting that, "[a]ccording to Florida law, the offense is punishable by up to 15 years imprisonment"), 34 (documenting Petitioner's Florida conviction for "Felony Arson Docket No. 96-CF-000323," stemming from an incident, "[o]n February 25, 1993, [when he] poured kerosene on the victim's residence and lit it on fire," along with his sentence of "7 years imprisonment").) "The [C]ourt adopt[ed] the [PSR] without change." (Docket Entry 60 at 1.) As Petitioner has acknowledged, his prison sentence constituted a downward departure from the ACCA-enhanced, mandatory minimum term of 180 months. (See Docket Entry 36 at 1.)

2

Petitioner then timely filed (pro se) his instant Section 2255 Motion (Docket Entry 31), with four grounds for relief (see id. at 2). "Ground Three" asserted a claim for ineffective assistance because "counsel failed to object to and/or appeal various sentencing errors." (Id.; see also id. at 10-11 ("Petitioner complains that his prior conviction for arson is not a violent felony . . . and counsel was ineffective for failing to object and/or to appeal this sentencing error on Petitioner's behalf. Petitioner moreover complains that this prior drug prior [sic] convictions relied upon in addition to his arson conviction were unconstitutional and invalid prior convictions which should not have been relied upon to enhance his sentence because those convictions were obtained in violation of [his] Sixth Amendment right to effective assistance of counsel throughout the underlying state proceedings; coupled with a violation of [his] Fourteenth Amendment right to due process in the state proceedings, inasmuch as the state court and the state prosecutorial authorities agrees [sic] to consolidate the prior convictions in the event Petitioner entered a plea of guilty thereto." (emphasis in original)).

Before the United States responded (and within the one-year statutory limitations period following the denial of certiorari, see 28 U.S.C. § 2255(f)(1); Clay v. United States, 537 U.S. 522, 527 (2003)), Petitioner amended his Section 2255 Motion (as of right, see Federal Rule of Civil Procedure 15(a)(1); see also 28

3

U.S.C. § 2242 ("[A habeas petition] may be amended or supplemented as provided in the rules of procedure applicable to civil actions.")), by altering "Ground Three . . . and [by] withdraw[ing] all other grounds." (Docket Entry 36 at 1; see also id. at 2 ("[P]etitioner hereby withdraws all previously filed claims for relief with the exception of what was previously numbered 'Ground Three'. This claim is now divided into two separate but related issues and is hereby amended . . . .").)[3]

As so amended, Petitioner's sentencing-related ineffective assistance claims appear as follows:

<u>Ground One</u>
Counsel was ineffective at sentencing and on appeal for failing to object to two of the Petitioner's prior convictions being used to enhance [him] as an Armed Career [Criminal] (18 U.S.C. §924(e)) when neither of the convictions at issue carried a potential sentence in excess of 10 years as required by 18 U.S.C. [§] 924(e)(2)(A)(ii). Had counsel made this objection at sentencing and/or raised the issue on direct appeal, the Petitioner would have prevailed and would not have been sentenced in excess of the otherwise applicable statutory maximum term.

<u>Ground Two</u>
Counsel was ineffective at sentencing and on direct appeal when counsel failed to object to or raise as an issue for review the fact that the government used non violent juvenile convictions against Petitioner as predicates for the 924(e) enhancements when non violent juvenile convictions are specifically excluded from the definition of "conviction" pursuant to 18 U.S.C. §924(e)(2)(C).

---

[3] Along with the amendment to his Section 2255 Motion, Petitioner filed a Memorandum in Support. (Docket Entry 37.)

4

(Docket Entry 36 at 2 (standard capitalization conventions applied)
(emphasis in original).)

The United States responded (Docket Entry 48) and Petitioner
replied (Docket Entry 50). In replying, Petitioner stated:

> The amended petition specifically withdrew several of the
> grounds previously raised by the [P]etitioner].
>
> Essentially, the [P]etitioner contends that his attorney
> was ineffective for failing to object to his prior
> Florida Drug convictions because (A) the sentencing law
> in the state of Florida in place at the time could not
> have possibly exposed [him] to ten years or more of
> imprisonment and therefore did not meet the statutory
> definition of "Serious Drug Offense" as defined by 18
> U.S.C. §924(e) and (B) that [sic] the [P]etitioner's non-
> violent juvenile adjudications are specifically excluded
> by the same statute.
>
> . . . [T]his Court does not need to address the withdrawn
> claims . . . .

(Id. at 1-2.)

Later, Petitioner filed his instant Rule 15(d) Motion,
"contend[ing] that he no longer ha[s] the three (3) prior predicate
convictions . . . require[d for] an enhancement pursuant to the
[ACCA] provision, because his attempted [sic] arson conviction[] no
longer qualif[ies] as a predicate[,] in light of Johnson[ v. United
States, ___ U.S. ___, ___], 135 S.Ct. 2551, 2557[ (2015)]."
(Docket Entry 52 at 3.) Pursuant to standard practice, the Court
(per Chief United States District Judge William L. Osteen, Jr.)
appointed counsel to represent Petitioner in connection with any
Johnson claim. (Text Order dated Aug. 26, 2016.)

Subsequently, Petitioner filed a pro se motion asking the Court to defer action on his Section 2255 Motion (as amended of right) to allow him "to present intervening United States Supreme Court caselaw, namely <u>Mathis v. United States</u>, [___ U.S. ___, 136 S. Ct. 2243 (2016)], and argument." (Docket Entry 54 at 1.)[4] The Court (per the undersigned Magistrate Judge) denied that request without prejudice and directed newly-appointed counsel "to file a status report . . . regarding the pending claims and any need for amendment suggested by [Petitioner's foregoing pro se motion]." (Text Order dated Sept. 22, 2016.)

In compliance with that directive, newly-appointed counsel for Petitioner advised the Court as follows:

> <u>Mathis</u> is the Supreme Court's most recent discussion of divisible vs. indivisible criminal statutes, and the role divisibility analysis plays in determining whether the criminal statute in question comes within the generic definition of one of the enumerated offenses in Section 924(e)(2)(B)(ii). Just as the Iowa burglary statute's inclusion of land, water and air vehicles rendered it broader than "generic burglary" in <u>Mathis</u>, so might the Florida arson statute's inclusion of "any vehicle, vessel, watercraft, or aircraft" in its definition of "structure." F.S.A. §806.01(3). If Florida arson is broader than "generic arson," then <u>Johnson</u>'s invalidation of the ACCA residual clause might mean Petitioner's Florida arson conviction no longer qualifies as an ACCA violent felony, and thus Petitioner might no longer qualify as an armed career criminal. However, that does not appear to be a viable argument, for two reasons.

---

[4] Petitioner submitted that motion to prison officials for mailing on September 13, 2016. (Docket Entry 54 at 2.)

First, although the common law definition of arson was generally limited to buildings, that is not the modern understanding. . . . ["]Today a majority of states make arson of personal property a crime, as does federal law. To exclude all but buildings from the concept of arson would be contrary to the modern understanding of arson, as well as being arbitrary.["] . . . It does not appear a non-frivolous argument can be made that <u>Johnson</u>'s invalidation of the ACCA residual clause means Petitioner's Florida arson conviction no longer qualifies as an ACCA violent felony, <u>Mathis</u> notwithstanding.

Second, <u>Johnson</u> would only be a basis for relief in Petitioner's case if his status as an armed career criminal depended upon counting that arson conviction as one of the three required predicate convictions. Given that Petitioner also has prior convictions for four counts of felony delivery of cocaine, for offenses that occurred on four separate occasions, it appears his status as an armed career criminal depends on his arguments regarding whether they qualify as "serious drug offenses" under 18 U.S.C. § 924(e)(2)(A)(ii), and whether his attorney was ineffective in not raising that argument, not on whether his arson conviction still qualifies as an ACCA violent felony after <u>Johnson</u>.

Counsel has not identified any other potentially meritorious theories under which <u>Johnson</u> would affect the lawfulness of Petitioner's conviction or sentence. . . . Counsel made this determination only after a conscientious review of the matter, including all relevant pleadings, Petitioner's [PSR], and the applicable law.

(Docket Entry 55 at 2-4 (quoting <u>United States v. Misleveck</u>, 735 F.3d 983, 985-86 (7th Cir. 2013)) (internal citations and block quote formatting omitted).)

Petitioner then made two unauthorized pro se filings, which he styled as "Title 28 U.S.C. § 2255 Motion Supplemental Authority and Argument" (Docket Entry 56) and "Title 28 U.S.C. §2255 Motion Supplemental Authority and Argument Addendum" (Docket Entry 57),

7

respectively.  According to the former filing (delivered to prison officials on October 23, 2016 (see Docket Entry 56 at 18)):

> Petitioner's restated and/or redacted grounds for relief are as follows:
>
> GROUND I:  Pursuant to the United States Supreme Court's decision in Mathis . . ., the crime of arson, as defined by Florida law . . . does not qualify as a predicate for enhancement under [the ACCA] as a "violent crime."
>
> GROUND II:  Petitioner received ineffective assistance of counsel, at sentencing and on direct appeal, for counsel's failure to argue that none of Petitioner's prior drug offenses in the state of Florida qualified as enhancement predicates under [the ACCA], because none of those convictions carried the possibility of a ten (10) year sentence.

(Docket Entry 56 at 1 (emphasis in original).)  The latter filing (submitted for mailing on November 29, 2016 (see Docket Entry 57 at 15)) (A) does not address Petitioner's arson conviction (see id. at 1-14), (B) repeats "Ground II" as quoted immediately above, but without the limiting phrase "because none of those convictions carried the possibility of a ten (10) year sentence" (id. at 1), and (C) argues that (i) "since it cannot be determined that [his] conviction [for one cocaine delivery offense] was not for 'purchase of cocaine' . . . th[at] conviction cannot act as an ACCA predicate" (id. at 7) and (ii) two other of his cocaine delivery convictions fail to satisfy the ACCA's definition of serious drug offense "because the selling of a controlled substance is not proscribed in the federal generic offense" (id. (emphasis in original)).

As an initial matter, for the reasons stated by his newly-appointed counsel (quoted above), Petitioner possesses no viable Johnson claim (even considering Mathis). The Court therefore should deny Petitioner's Rule 15(d) Motion. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (ruling that "futility of amendment" warrants denial of leave to amend in Section 2255 context); see also Hill v. Equifax Info. Servs., LLC, No. 1:11CV107, 2013 WL 474789, at *3 (M.D.N.C. Feb. 7, 2013) (unpublished) ("The same standard applies to a motion under Federal Rule of Civil Procedure 15(d), as to one under Federal Rule of Civil Procedure 15(a). See Franks v. Ross, 313 F.3d 184, 198 & n.15 (4th Cir. 2002); Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 644 (M.D.N.C. 2004) (recommendation of Dixon, M.J., adopted by Beaty, J.).").

Petitioner's Section 2255 Motion (as amended of right) also fails as a matter of law. As summarized by Petitioner in his reply in support of his Section 2255 Motion (as amended of right):

> [P]etitioner contends that his attorney was ineffective for failing to object to his prior Florida Drug convictions because (A) the sentencing law in the state of Florida in place at the time could not have possibly exposed [him] to ten years or more of imprisonment and therefore did not meet the statutory definition of "Serious Drug Offense" as defined by 18 U.S.C. §924(e) and (B) [his] non-violent juvenile adjudications are specifically excluded by the same statute.

9

(Docket Entry 50 at 1-2.)  Petitioner cannot establish ineffective assistance of counsel in either regard.

To make out an ineffective assistance claim, Petitioner must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted.  See Strickland v. Washington, 466 U.S. 668, 687-94 (1984). "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one."  Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted).

As to Petitioner's claim based on the absence of an objection and/or appeal regarding "non-violent juvenile adjudications" (Docket Entry 50 at 1), the ACCA states that "the term 'conviction' includes a finding that a person has committed an act of juvenile delinquency involving a **violent felony**," 18 U.S.C. § 924(e)(2)(C) (bold added); therefore, by negative implication, an act of juvenile delinquency involving a **serious drug offense** arguably does **not** constitute a conviction for purposes of the ACCA.  Petitioner's PSR, however, reflects that he incurred adult convictions, **not** juvenile adjudications, for the four cocaine delivery offenses at issue, notwithstanding his age (of 16) at the time of the first three.  (See Docket Entry 59, ¶¶ 27, 31 (listing Petitioner's four Florida cocaine delivery convictions under heading "Adult Criminal

10

Conviction(s)"); see also id., ¶ 26 (reporting "None known" under heading "Juvenile Adjudications").)[5]    Petitioner's ineffective assistance claim on this front thus cannot succeed.    See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally ineffective in failing to object . . . [if] it would have been futile for counsel to have done so . . . .")).

_____

[5] Petitioner has come forward with no evidence contradicting the PSR's findings on point; to the contrary, apparent public records from the State of Florida (submitted by Petitioner with his Rule 15(d) Motion) confirm that he incurred adult convictions, not juvenile delinquency adjudications, for the three cocaine delivery offenses he committed as a 16-year-old. (See Docket Entry 52-1 at 2, 3.)    Moreover, Florida law permits such dispositions.    See Graham v. Florida, 560 U.S. 48, 53 (2010) ("Under Florida law, it is within a prosecutor's discretion whether to charge 16- and 17-year-olds as adults or juveniles for most felony crimes."); United States v. Cortes, 427 F. App'x 803, 806 (11th Cir. 2011) ("Under Florida's Juvenile Justice Act, adjudications of law violations by children under the age of 18 occur in the juvenile court . . . 'unless, in compliance with the Act, juvenile jurisdiction is waived or the juvenile falls under a statutory exception.'    State v. Griffith, 675 So. 2d 911, 912-13 (Fla. 1996); see also Fla. Stat. § 985.0301(1) (conferring jurisdiction), § 985.35 (providing for adjudicatory hearings in juvenile court). Florida law provides several ways the criminal case of a child fourteen or older may be transferred from juvenile court to adult court for prosecution."); see also United States v. Lender, 985 F.2d 151, 156-57 (4th Cir. 1993) ("States differ in their assessments of when crimes should be treated as having been committed by juveniles or adults.    States generally make the distinction based on the perpetrator's age, with the distinction being made anywhere from age sixteen to age nineteen.    Decisions are made, however, to try some persons of juvenile age as adults . . . .    Whether the states themselves adopt an approach to juvenile delinquency that emphasizes categorical age limits or that places greater discretion over the kind of prosecution in the hands of state authorities is not material.    The point is simply that Congress has expressed its intention [in the ACCA] to follow the state's decision." (internal citation omitted)).

11

Nor can Petitioner show that his counsel acted unreasonably by opting against challenging Petitioner's Florida cocaine delivery convictions as ACCA predicates on the grounds that they did not carry "a maximum term of imprisonment of ten years or more," 18 U.S.C. § 924(e)(2)(A)(ii). The PSR documented that those four convictions each were "punishable by up to 15 years imprisonment." (Docket Entry 59, ¶¶ 27, 31.) Consistent with that conclusion, the United States Court of Appeals for the Eleventh Circuit (which encompasses Florida) has observed that Florida law "punishes the sale, manufacture, delivery, or possession with intent to sell, manufacture, or deliver cocaine as a second-degree felony. Second-degree felonies are punishable by up to fifteen years' imprisonment." United States v. Williams, No. 16-16403, 2017 WL 2712964, at *3 (11th Cir. June 23, 2017) (unpublished) (internal citation omitted) (citing Fla. Stat. § 893.13(1)(a)(1) and Fla. Stat. § 775.082(3)(d), respectively); accord United States v. Gibson, 434 F.3d 1234, 1240 n.5 (11th Cir. 2006).

Petitioner has not contested that reading of Florida's statutes, but instead has argued that:

> At the time of sentencing for [his four cocaine delivery] offenses[, his] sentencing point total relevant to the laws of the State of Florida was no greater than 39.80 points.
>
> Pursuant to the laws of the State of Florida at the time of th[ose four] convictions and sentences, the [Florida] court could not incarcerate at all, a defendant with less than forty points.

12

> Under no set of circumstances could . . . [P]etitioner
> have been sentenced to a prison term of ten years for the
> charges at issue.

(Docket Entry 36 at 3 (internal paragraph numbers omitted).)

Petitioner's reference to his "sentencing point total" concerns Florida's sentencing guidelines, which the United States Supreme Court has described as follows:

> In 1983, the Florida Legislature enacted legislation
> replacing Florida's system of indeterminate sentencing
> with a sentencing guidelines scheme . . . .
>
> In accordance with this legislation, the Supreme Court of
> Florida developed sentencing guidelines that went into
> effect on October 1, 1983.  See *In re Rules of Criminal
> Procedure (Sentencing Guidelines)*, 439 So.2d 848 (Fla.
> 1983). . . . .  A single sentencing "scoresheet" [is]
> prepared . . . .  [P]oints [are] assigned based on the
> primary offense, additional offenses at the time of
> conviction, prior record, legal status at the time of the
> offense, and victim injury.  The defendant's total point
> score then [is] compared to a chart for that offense
> category, which provide[s] a presumptive sentence for
> that composite score.
>
> The presumptive sentence range was "assumed to be
> appropriate for the composite score of the offender."
> Fla. Rule Crim. Proc. 3.701(d)(8) (1983).  Within the
> recommended range, the sentencing judge had discretion to
> fix the sentence "without the requirement of a written
> explanation."  Ibid.  If the sentencing judge wished to
> depart from the guideline range, however, the judge had
> to give clear and convincing reasons in writing . . . .

<u>Miller v. Florida</u>, 482 U.S. 423, 425-26 (1987), <u>abrogation in part
on other grounds recognized</u>, <u>Peugh v. United States</u>, ___ U.S. ___,
___, n.4, 133 S. Ct. 2072, 2083 n.4 (2013); <u>see also</u> <u>Williams v.
United States</u>, No. 5:12CR14, 2016 WL 6780027, at *5 (W.D. Va. Nov.
15, 2016) (unpublished) ("Florida felonies committed between

13

October 1, 1983 and January 1, 1994 were subject to sentencing guidelines set forth in Rule 3.701 of the Florida Rules of Criminal Procedure. Rule 3.701(b)(6) provides that 'departures from the presumptive sentences established in the guidelines shall be articulated in writing and made when circumstances or factors reasonably justify the aggravation or mitigation of the sentence.' Florida felonies committed on or after January 1, 1994, and before October 1, 1995 were subject to sentencing guidelines set forth in Rule 3.702 of the Florida Rules of Criminal Procedure. Rule 3.702(b)(16) establishes a 'Presumptive Sentence' determined by calculating total sentence points. The rule states that 'if the total sentence points are less than or equal to 40, the recommended sentence, absent a departure, shall not be state prison.' In order to depart from this Presumptive Sentence, 'a state prison sentence where the total sentence points are equal to or less than 40 must be accompanied by a written statement delineating the reasons for departure.'" (internal brackets and ellipsis omitted)).[6]

---

[6] Given the time-line noted in <u>Williams</u>, it appears the 40-point threshold for recommended imprisonment terms under Florida's sentencing guidelines applied only to Petitioner's 1994 cocaine delivery conviction, **not** his three earlier cocaine delivery convictions. In any event, Petitioner's own filings include the "scoresheet" for those earlier convictions and it reflects a point total of 116. (Docket Entry 52-1 at 9.) Moreover, Petitioner's filings confirm that he received three concurrent prison terms of four and a half years for those convictions. (<u>See</u> <u>id.</u> at 6-7.)

According to Petitioner, "[p]rior to sentencing[, he] asked [his] counsel why United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) [(en banc),] did not apply to his situation and [he] was informed by [his] counsel that Simmons could not be applied to any statute other than one from North Carolina." (Docket Entry 36 at 3.)[7] Petitioner would have the Court label such advice professionally incompetent (given the state of the law at the time of his sentencing and appeal in 2013, see Strickland, 466 U.S. at 689-90 (explaining that, to obtain relief, a petitioner must show that counsel's conduct fell below "prevailing professional norms,"

---

[7] Simmons abrogated United States v. Harp, 406 F.3d 242 (4th Cir. 2005), which had held that, "to determine whether a conviction is for a crime punishable by a prison term exceeding one year under [the] North Carolina [Structured Sentencing Act, N.C. Gen. Stat. §§ 15A-1340.10 et seq., a federal court must] consider the maximum aggravated sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." Simmons, 649 F.3d at 241 (internal quotation marks omitted); see also id. at 247 ("[The defendant's] North Carolina conviction was for only non-aggravated, first-time marijuana possession [with intent to sell]. Accordingly, his 'offense' was not 'punishable' by a term of imprisonment exceeding one year, which is reserved for repeat offenders. . . . The North Carolina Structured Sentencing Act metes out harsher punishment only when the prosecution proves 'the fact' of a defendant's prior convictions. Thus, when used as a predicate for federal sentencing purposes, the [North Carolina Structured Sentencing] Act creates separate offenses that in turn yield separate maximum punishments."), 250 ("[The North Carolina Structured Sentencing Act] adopt[s] a strictly regimented sentencing scheme that requires sentencing judges to effectively tailor the statutory maximum punishment available to each individual defendant." (internal brackets and quotation marks omitted)).

without relying on the "distorting effects of hindsight")). The Court should decline to do so.

To begin, "the standard for judging counsel's representation is a most deferential one." Harrington, 562 U.S. at 105. Specifically, "counsel is **strongly presumed** to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690 (bold added). Moreover:

> [T]o meet the constitutional standard for effectiveness, representation by counsel must only be objectively reasonable, **not flawless or to the highest degree of skill.** Inherent in this standard is the acknowledgment that even the most skillful defense attorneys are bound to make mistakes, sometimes very important mistakes . . . . If the legal system were to afford prisoners a cause of action merely for demonstrating that, in hindsight, their trial counsel could have done something better, the court system would be choked with habeas petitions and trials on those petitions.

Woodruff v. Warden, Perry Corr. Inst., C.A. No. 9:07-2739-PMD-GCK, 2008 WL 4200291, at *7 (D.S.C. Sept. 8, 2008) (unpublished) (internal citation and quotation marks omitted)), appeal dismissed, 326 F. App'x 698 (4th Cir. 2009).

Here, Petitioner cannot show deficient performance by counsel for several reasons. First, consistent with the conclusion that Petitioner reports his counsel reached in 2013, the United States Court of Appeals for the Fourth Circuit indicated in Simmons that its ruling turned on highly distinctive characteristics of the

16

North Carolina Structured Sentencing Act **not** shared with the laws of other jurisdictions (particularly not jurisdictions – like Florida – with sentencing guidelines systems that allowed judges to impose higher prison terms than the guidelines prescribed). Indeed, the Simmons Court began its discussion with this preface: "A proper analysis of [the defendant's] sentencing enhancement requires that we first place his prior North Carolina conviction in the context of the **unique** statutory regime mandated by the North Carolina Structured Sentencing Act." Simmons, 649 F.3d at 249 (bold added) (internal parenthetical omitted). An attorney could reasonably conclude that the Fourth Circuit chose the adjective "unique" carefully, with full appreciation of its then-established definition: "Of which there is **only one; one and no other; single, sole, solitary**. . . . That is or forms **the only one of a kind; having no like or equal; standing alone in comparison with others** . . . . Formed or consisting of **one or a single thing**." Unique, Oxford English Dictionary (2d ed. 1989) (bold added).[8]

---

[8] Well after the decision in Simmons, a new edition of the Oxford English Dictionary came out, retaining the same basic definition quoted above (with some reordering), but adding an entry for "[d]esignating a distinct individual who visits a particular website or web page within a specified period of time, who is counted only once for the purposes of visitor statistics regardless of the number of visits they make in that time." Unique, Oxford English Dictionary (3d ed. 2015).

Simply put: (1) <u>Simmons</u> involved an analysis of the North Carolina Structured Sentencing Act; (2) the Fourth Circuit explicitly described the North Carolina Structured Sentencing Act as "unique"; and (3) a competent attorney would have understood that description to signify that the analysis in <u>Simmons</u> applied **only** to the North Carolina Structured Sentencing Act and **no other** state's laws, because the North Carolina Structured Sentencing Act represented the **only one of its kind**, had **no equal**, and **stood alone in comparison with others**. As a result, Petitioner's attorney did **not** act in a professionally unreasonable manner in 2013 by advising Petitioner "that <u>Simmons</u> could not be applied to any statute other than one from North Carolina" (Docket Entry 36 at 3).

Further, the <u>Simmons</u> Court emphasized that the North Carolina Structured Sentencing Act:

1) "create[d] sentences strictly contingent on two factors: the designated 'class of offense' and the offender's 'prior record level,'" <u>Simmons</u>, 649 F.3d at 240 (quoting N.C. Gen. Stat. § 15A-1340.13(b)); and

2) "provide[d] that a judge may select from the aggravated range *only* if the State has provided a defendant thirty-days' notice of its intent to prove the necessary aggravated factors, and a jury has found beyond a reasonable doubt (or the defendant has pled to) the existence of those factors," <u>id.</u> (internal citation

18

omitted) (citing N.C. Gen. Stat. § 15-A-1340.16(a), (a1), & (a6)) (emphasis in original).

Contrastingly (as detailed above), at the time of Petitioner's cocaine delivery convictions, Florida law directed judges to consider a variety of factors (not just class of offense and offender's prior record) to arrive at a recommended guidelines sentence, but left judges wide discretion to depart upward from that recommendation to a (separate) statutorily-established maximum prison term. See Miller, 482 U.S. at 425-26; Williams, 2016 WL 6780027, at *5. Those distinctions confirm that Petitioner's counsel did not commit professional negligence by opting against a Simmons-based attack on the determination that Petitioner's cocaine delivery convictions warranted enhanced punishment under the ACCA.

In that regard, as the Simmons Court acknowledged, the United States Supreme Court has "rejected the argument that 'guidelines systems,' which 'typically allow a sentencing judge to impose a sentence that exceeds the top of the guidelines range,' serve to 'decrease the maximum term' of imprisonment.'" Simmons, 649 F.3d at 243 (quoting United States v. Rodriguez, 553 U.S. 377, 390 (2008)). The Simmons Court deemed that aspect of Rodriguez inapposite in the case before it, because it concluded that the North Carolina Structured Sentencing Act "does not establish a 'guidelines system'; rather, it mandates specific sentences." Id. at 244 (internal brackets omitted) (emphasis in original). That

19

distinction, however, does **not** apply to Florida law at the time of Petitioner's cocaine delivery convictions (i.e., the Florida courts sentenced him for those offenses under a "guidelines system" that allowed a departure from the guidelines recommendation up to the statutory maximum of 15 years in prison).  Petitioner therefore cannot show that his counsel rendered unreasonable representation by forsaking a challenge under Simmons to the use of his Florida cocaine delivery convictions as ACCA predicates.[9]

A decision from the United States Court of Appeals for the District of Columbia Circuit further illustrates the point:

---

[9] Consistent with that conclusion, both the Eleventh Circuit and the United States Court of Appeals for the Sixth Circuit have held that federal courts should look to Florida's statutory penalty provisions, not its sentencing guidelines, when determining the maximum "punishable" amount for Florida drug offenses.  Albo v. United States, 498 F. App'x 490 (6th Cir. 2012); McCarthy v. United States, 135 F.3d 754 (11th Cir. 1998).  Notably, in reaching that conclusion, the Sixth Circuit expressly rejected the argument that its prior decision in United States v. Pruitt, 546 F.3d 416 (6th Cir. 2008), required a different result.  In Pruitt, "[t]he district court sentenced the defendant as a career offender under the federal sentencing guidelines because he had two prior drug convictions in North Carolina."  Albo, 498 F. App'x at 496-97 (citing Pruitt, 545 F.3d at 417).  The Pruitt Court "vacated the defendant's sentence, however, because under North Carolina's **unique** structured sentencing scheme, the maximum sentence that the defendant could have received for each of his prior convictions was not [more than 12 months in light of] . . . his prior record level . . . ."  Id. at 497 (bold added) (citing Pruitt, 545 F.3d at 419); see also Simmons, 649 F.3d at 244 (discussing Pruitt approvingly). The Albo Court held that the case before it (requiring a determination of the maximum sentence for a Florida drug conviction) "[wa]s easily distinguishable from Pruitt **because it d[id] not involve a statute similar to the North Carolina statute** at issue in [Pruitt]."  Albo, 498 F. App'x at 497 (bold added).

> To establish a successful [ineffective assistance] claim
> . . ., a defendant must prove that counsel's performance
> fell below an objective standard of reasonableness under
> prevailing professional norms . . . .  As a general
> matter, the bar of objective reasonableness is set rather
> low.
>
> . . . [The defendant contends] an objectively reasonable
> attorney would have [raised this issue] . . . .  We
> reject this argument. . . .  A perfect lawyer with
> unlimited resources might have made a careful study of
> this difficult area of law, read the tea leaves, and
> lodged whatever objection his reading of the [law] might
> fairly support.  The Sixth Amendment, however, does not
> pledge perfection.  Had trial counsel neglected [to raise
> an issue on] which his client was **obviously** entitled [to
> prevail], our conclusion might be different.  But there
> is little that [wa]s **obvious** about [this area of the law
> at that time] . . . .  It would be unduly harsh to brand
> the bar incompetent for failing to grasp that which
> elude[d] the bench.

United States v. Hurt, 527 F.3d 1347, 1356 (D.C. Cir. 2008)

(internal citations omitted) (bold added); see also Gordon v.

United States, 518 F.3d 1291, 1298 (11th Cir. 2008) ("The failure

to object to a single error that is either **unobvious** or

nonprejudicial does not stamp counsel's overall performance with a

mark of ineffectiveness.  It would be nonsensical if a petitioner,

on collateral review, could subject his challenge of an

unobjected-to error to a lesser burden [than he bore on direct

appeal] by articulating it as a claim of ineffective assistance."

(internal citation and quotation marks omitted) (bold added)).[10]

---

[10] Petitioner's request for the Court to "take judicial notice
of" United States v. Lockett, 782 F.3d 349 (7th Cir. 2015) (Docket
Entry 47 at 1), does not alter the result for at least two reasons.
(continued...)

As a final matter, the Court should not grant relief in connection with Petitioner's apparent attempt (through his unauthorized "Title 28 U.S.C. § 2255 Motion Supplemental Authority and Argument" (Docket Entry 56) and "Title 28 U.S.C. §2255 Motion Supplemental Authority and Argument Addendum" (Docket Entry 57)) to assert new claims challenging (1) the designation of his Florida arson conviction as an ACCA predicate based on <u>Mathis</u> and (2) his counsel's failure to contest reliance on three of his Florida cocaine delivery convictions to satisfy the ACCA because one conviction could have involved purchasing cocaine and the other two convictions involved selling cocaine (which claim also relied on <u>Mathis</u>). Numerous courts have recognized that, "when a habeas petitioner has not moved to amend his petition, the Court will not consider any allegations or arguments stemming from [a] new claim." <u>White v. Keller</u>, No. 1:10CV841, 2013 WL 791008, at *3 (M.D.N.C. Mar. 4, 2013) (unpublished) (Schroeder, J.) (collecting cases)

_____

[10](...continued)
First, that case did not involve an analysis of a guidelines system like Florida's. <u>See</u> <u>Lockett</u>, 782 F.3d at 350-53. Second, in assessing the performance of Petitioner's counsel, this Court must consider the state of the law at the time of Petitioner's sentencing and appeal (in 2013), not years later (in 2015, when the United States Court of Appeals for the Seventh Circuit decided <u>Lockett</u>). <u>See, e.g.</u>, <u>LeCroy v. United States</u>, 739 F.3d 1297, 1323-24 (11th Cir. 2014) ("The problem with [the petitioner's] argument is that it invites us to evaluate counsel's conduct retrospectively, rather than at the time of trial. . . . *Strickland* is concerned with prevailing professional norms at the time of trial, not with subsequent developments in the law."), <u>cert. denied</u>, ___ U.S. ___, 135 S. Ct. 1528 (2015).

22

(internal quotation marks omitted).  Moreover, if Petitioner had sought leave to add such claims, the Court would have denied the proposed amendment(s) as futile.  See Pittman, 209 F.3d at 317.

Regarding Petitioner's Mathis claim directed at his arson conviction, as explained by his newly-appointed counsel, that conviction remains a violent felony under the ACCA, "Mathis notwithstanding."  (Docket Entry 55 at 4.)  In any event, Petitioner's purported arson-related Mathis claim and ineffective assistance claim for failure of counsel to argue that three cocaine delivery convictions did not qualify as serious drug offenses under the ACCA because one could have involved purchasing cocaine and the other two involved selling cocaine both would have failed as untimely.  Petitioner's conviction became final on April 28, 2014 (i.e., when the United States Supreme Court denied certiorari, see Clay, 537 U.S. at 527) and his deadline to bring any claim under Section 2255 expired one year later (i.e., April 28, 2015), see 28 U.S.C. § 2255(f)(1); Petitioner, however, did not articulate these claims until his unauthorized filings submitted for mailing on October 23, 2016 (Docket Entry 56 at 18), and November 29, 2016 (Docket Entry 57 at 15), respectively.[11]

---

[11] Delayed accrual may extend the time to assert some claims, see 28 U.S.C. § 2255(f)(2)-(4), but none of those provisions apply in this instance.  Nor do the belated claims at issue relate back to Petitioner's timely claims.  See Pittman, 209 F.3d at 318.

<u>CONCLUSION</u>

Petitioner's ineffective assistance of counsel claims concerning juvenile adjudications and the maximum sentence for his prior Florida cocaine delivery convictions, as well as his proposed <u>Johnson</u> claim, all fail as a matter of law.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Section 2255 Motion (Docket Entry 31), as amended of right (<u>see</u> Docket Entry 36), and his Rule 15(d) Motion (Docket Entry 52) both be denied without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 14, 2017